IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANNY E. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-06-651-HE |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Danny E. Miller ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing an application seeking disability insurance benefits in January, 2004, alleging that he suffered limitations resulting from a broken back and a broken left arm, from nerve damage in his left arm, and from partial loss of use of his right hand [Tr. 57 - 59 and 73]. March 21, 2000, the date of an on-the-

---

[1]Effective February 1, 2007, Michael J. Astrue became Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant in this action.

job accident, was the claimed date of disability onset.[2]  *Id.*  Plaintiff's claim was denied initially and upon reconsideration [Tr. 34 - 37 and 39 - 41]; at Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a May, 2005, hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 42 and 379 - 408].  In his July, 2005, decision the ALJ found that Plaintiff was not disabled because he retained the ability to perform work available both regionally and nationally [Tr. 16 - 26].  The Appeals Council of the Social Security Administration declined Plaintiff's review request, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 6 - 8].

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial

---

[2] Plaintiff had filed a previous application, the denial of which was not appealed [Tr. 31 - 33 and 54 - 56].  Accordingly, it was determined that Plaintiff was precluded from establishing disability on or before July 22, 2003 [Tr. 16]; Plaintiff does not contest that determination here.

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). The Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). In this case, the ALJ determined that Plaintiff was unable to perform his past relevant work and continued the sequential inquiry through the fifth step.

**Plaintiff's Claims of Error**

Plaintiff first maintains that the ALJ erred by giving greater weight to the opinion of a one-time examining physician than he did to the opinion of Plaintiff's treating physician. Secondly, Plaintiff claims that the ALJ erred by wholly failing to consider the

3

records of another treating physician.  Finally, Plaintiff asserts that the ALJ improperly discounted Plaintiff's credibility.

**Analysis**

Plaintiff – fifty-one (51) years old at the time of the ALJ's decision – was injured when he fell sixteen (16) feet from a railroad car fracturing his back and his left hand and causing numbness in his left arm [Tr. 18, 24 and 386 - 387].  Plaintiff also had a previous work-related injury to his dominant right hand that caused him to lose partial feeling in his fingers [Tr. 387].  After a detailed review of Plaintiff's multiple surgeries, physical therapy and related examinations, including those pursuant to a worker's compensation claim filed by Plaintiff, the ALJ concluded that Plaintiff was severely impaired by degenerative disc disease of the lumbar spine status post compression fracture and multiple surgeries, status post fracture of his left wrist and corrective surgery, neuropathy of the left upper extremity, and partial amputation of digits on his dominant hand [Tr. 17].  The ALJ determined that Plaintiff's claim of disabling pain as a result of these impairments was not entirely credible, in part due to the medical evidence and in part due to his activities of daily living [Tr. 22 - 23].  Plaintiff was found to have the residual functional capacity[3] to lift and/or carry twenty (20) pounds occasionally and ten (10) pounds frequently, to stand and/or walk for six (6) hours in an eight (8) hour workday, to sit for six (6) hours in an eight (8) hour workday, and to perform gross manipulation using his upper extremities despite his loss of ability to feel with his hands and to perform fine manipulation [Tr. 23].  The ALJ ultimately determined that Plaintiff was not

---

[3]Residual functional capacity ("RFC") "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 404.1545 (a) (1).

4

disabled because, while unable to perform his previous work as a railroad car loader, he could perform other available jobs [Tr. 25].

**The Opinion of Treating Physician Pendleton**

Bruce Pendleton, M.D., is the neurosurgeon who saw Plaintiff on the day of his fall and who performed each of the multiple surgeries related to Plaintiff's fractured back. Dr. Pendleton determined on January 5, 2004, that Plaintiff had reached maximum medical improvement and released him from further medical care with the following report to the worker's compensation carrier:

> Danny Miller was back in the office today for a follow up. He has increased his Neurontin to 1800 mg a day and this has helped the complaints he was having with his left leg pain. His back still is painful with weather changes but is more tolerable than it has been in the past. He has finished his physical therapy and his functional capacity testing which I will send a copy along with this letter which I agree with the findings in his abilities as stated in this summary. In doing this, he can not return to his previous job and will require fairly sedentary work in order to be employed.
>
> His examination today showed normal motor strength in his lower extremities. No x-ray's were taken today.
>
> At this time it has been fifteen months since his vertebrectomy and instrumentation which has healed and I feel he has reached maximum medical benefit at his point and plan to release him from my care. I did talk to him about raising his Neurontin to 2400 mg a day and I also renewed a prescription for Parafon as a muscle relaxer and I feel that these will be long term medications for him. I have given him a thirty percent permanent partial disability to the whole person based on AMA guidelines. If I can be of further help please let me know.

[Tr. 276].

The ALJ determined while that Dr. Pendleton's treating source opinion would ordinarily receive controlling weight, his "broad assessment that the claimant is able to perform 'fairly sedentary work' does tend to conflict with other substantial evidence in

5

the record." [Tr. 21]. In identifying the conflicting evidence, the ALJ pointed to Plaintiff's own testimony that he was able to lift as much as ten (10) to fifteen (15) pounds "which is closer to light exertional work than sedentary." *Id.*[4] Additionally, Dr. Jones – a one time examiner for purposes of a worker's compensation report – provided a specific weight lifting limitation of twenty (20) pounds "whereas Dr. Pendleton's opinion gives no such detailed limitation." *Id.* Finally, the ALJ concluded that, "Dr. Pendleton's own examination reports repeatedly show that the claimant has maintained normal motor strength in his lower extremities, and the medical evidence does not otherwise support why he would be unable to meet the standing and walking demands of light exertional work." *Id.* Consequently, the ALJ gave Dr. Pendleton's "broad conclusion" assessing "fairly sedentary work" less than controlling weight. *Id.*

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th

---

[4]Social Security regulations prescribe the lifting limitations of sedentary and light work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.

20 C.F.R. § 404.1567 (a).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.

20 C.F.R. § 404.1567 (b).

Cir. 2003)  The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques.  *Watkins,* 350 F.3d at 1300.  At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record."  SSR 96-2p, 1996 WL 374188, at *2.  If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion."  *Id.*  If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Watkins,* 350 F.3d at 1300.  Once the ALJ determines that a treating source opinion is not entitled to controlling weight, he must consider the weight he does give to such opinion and, if he rejects the opinion completely, he must offer specific and legitimate reasons for so doing.  *Id.* at 1300-1301; SSR 96-2p, 1996 WL 374188, at *4; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

      Here, the ALJ made no specific mention of whether he found Dr. Pendleton's opinion supported by acceptable medical techniques but focused instead on the second step and determined for three specific reasons that Dr. Pendleton's opinion was inconsistent with other substantial evidence in the record and, thus, not entitled to controlling weight.  The first inconsistency specified by the ALJ was based on Plaintiff's testimony that he thought he was able to lift as much as ten (10) to fifteen (15) pounds

and that this was closer to the lifting capabilities of light work – twenty (20) pounds – than sedentary work – ten (10) pounds.  The ALJ's explanation is illogical.  Ten (10) to fifteen (15) pounds is no closer to twenty (20) pounds than it is to ten (10) pounds and, in fact, if averaged at twelve and a half (12 ½) pounds, is actually closer to the sedentary limitation.

Turning to the ALJ's second reason for determining that Dr. Pendleton's assessment was inconsistent with other evidence of record – "Dr. Jones provided a specific weight lifting limitation of twenty pounds . . . whereas Dr. Pendleton's opinion gives no such detailed limitation" [Tr. 21] – the ALJ apparently ignored Dr. Pendleton's statement to the worker's compensation carrier that he was enclosing a copy of the results of recent functional capacity testing as well as his statement that "I agree with the findings in his abilities as stated in this summary." [Tr. 276].  The results are not included with the copy of Dr. Pendleton's letter in the record and neither, based on the undersigned's review, do they appear anywhere in the record.[5]  Nonetheless, because Dr. Pendleton's letter stated that he had arrived at an opinion on Plaintiff's specific functional abilities as reflected by a purported enclosure, the ALJ could not properly discount Dr. Pendleton's assessment on the grounds that it was not as detailed as that of Dr. Jones.  Where "the report [of a treating physician] does not contain all the necessary information[,]" see 20 C.F.R. § 404.1512 (e) (1), the ALJ should have recontacted Dr.

---

[5]A report of the results of Plaintiff's most current functional capacity testing does exist because Dr. Jones' report includes a reference to such a test that "was performed on December 12, 2003 which revealed that the patient could safely perform light and sedentary work duties." [Tr. 374].  This does not establish, however, that Plaintiff could perform a *full* range of work at the light exertional level as Dr. Pendleton reviewed the same results and characterized Plaintiff's capacity to be in the "fairly sedentary" range. [Tr. 276].

8

Pendleton in an effort to obtain a copy of the functional assessment.  *See White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2002) ("[I]t is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty" to recontact the treating physician.)  With respect to the ALJ's determination that Dr. Pendleton's "fairly sedentary" assessment is inconsistent with his finding that Plaintiff had normal motor strength in his lower extremities, while it is far from certain how normal motor strength equates with the abilities to walk and stand,  the missing functional assessment adopted by Dr. Pendleton should clarify his opinion on Plaintiff's limitations, if any, in standing and walking.[6]

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by March 6, 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore*

---

[6]On remand, the ALJ's treatment of Dr. Pendleton's opinion could impact the remaining issues raised by Plaintiff.  Accordingly, they are not addressed in this report.  *See Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003).

*v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 14th day of February, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE